**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY BACCARI, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION FILE NO. |
| Plaintiff, | : : | |
| v. | : : | |
| CARGUARD ADMINISTRATION, INC., | : : | **COMPLAINT – CLASS ACTION** |
| Defendant. | : : : | **JURY TRIAL DEMANDED** |
| _____/ | : | |

     Plaintiff Anthony Baccari ("Plaintiff") (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## <u>NATURE OF ACTION</u>

     1.     As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

     2.     However, the TCPA doesn't only restrict robocalls.

3.      Indeed, the Fourth Circuit has recognized that "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his

own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.      This case involves a campaign by A-List Marketing Solutions, Inc. ("A-List Marketing"), a telemarketer retained by CarGuard Administration, Inc. ("CarGuard") to market CarGuard's services through the use of pre-recorded telemarketing calls and to numbers on the National Do Not Call Registry in plain violation of the TCPA.

6.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

7.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

8.      Plaintiff Anthony Baccari is an individual that resides in this District.

9.      Defendant Carguard Administrations, Inc. is a Kansas corporation. Carguard is registered to do business in the Pennsylvania and has a registered agent of Incorp. Services, Inc.

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

11.     This Court has personal specific jurisdiction over CarGuard because it services the contracts offered on the calls by A-List Marketing, including on the calls to the Plaintiff.

Carguard is also registered to do business in this District. Furthermore, CarGuard sent the Plaintiff a CarGuard contract following calls by A-List Marketing.

12.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because as calls were made into this District.

## TCPA BACKGROUND

<u>Calls Made Using a Pre-Recorded Message</u>

13.      The TCPA regulates, among other things, the use of a pre-recorded message to make calls or send pre-recorded calls.  *See* 47 U.S.C. § 227, *et seq*.; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

14.      Specifically, the TCPA prohibits the use of a pre-recorded message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C.  § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

15.      "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12).

16.      "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the

4

signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R.

§ 64.1200(f)(8).

The National Do Not Call Registry

17.    The National Do Not Call Registry allows consumers to register their telephone

numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.

*See* 47 C.F.R. § 64.1200(c)(2).

18.    A listing on the Registry "must be honored indefinitely, or until the registration is

cancelled by the consumer or the telephone number is removed by the database administrator."

*Id*.

19.    The TCPA and implementing regulations prohibit the initiation of telephone

solicitations to residential telephone subscribers to the Registry and provides a private right of

action against any entity that makes those calls, or "on whose behalf" such calls are promoted.

47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

20.    Defendant CarGuard is a "person" as the term is defined by 47 U.S.C. § 153(39).

21.    At no point have the Plaintiff sought out or solicited information regarding

Defendant CarGuard's services prior to receiving the pre-recorded calls at issue.

Calls to Plaintiff Baccari

22.    Mr. Baccari's cellular telephone number is (856) 625-XXXX.

23.    That cellular telephone number is a residential telephone line used by Mr. Baccari

for personal calls.

24.    That telephone number is not associated with a business.

5

25.     That telephone number had been on the National Do Not Call Registry for at least a year prior to September 2021.

26.     Despite that, Mr. Baccari received pre-recorded telemarketing calls from A-List, or a call center retained on their behalf, on September 21, 22, 23, 24, 25, and 28, 2021.

27.     The calls played a pre-recorded message.

28.     The pre-recorded message did not identify the caller.

29.     The pre-recorded message was about auto warranties.

30.     During the September 28, 2021 call, the Plaintiff responded to the pre-recorded message and engaged the telemarketer to learn their identity.

31.     The call promoted CarGuard's services.

32.     The caller attempted to sell the Plaintiff CarGuard vehicle warranty services.

33.     The Plaintiff then received a proposed service contract from CarGuard as a result of the call.

34.     The service contract provided the Plaintiff's address in Philadelphia.

35.     The service contract also confirmed that the seller of the CarGuard policy was "Palisade Protection Group", which is a trade name used by A-List.

36.     The service contract also included information on the automobile the Plaintiff told A-List about on the robocall received.

37.     The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for CarGuard's services.

38.     This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

## <u>CARGUARD'S LIABILITY FOR THE CALLS AT ISSUE</u>

39.     For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

40.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

41.     In that ruling, the FCC instructed that sellers such as CarGuard may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

42.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

43.     A-List Marketing was contractually required to promote CarGuard products on their telemarketing calls in order to potentially generate new customers, and did so, as they did with the Plaintiff.

44.     In fact, CarGuard admits that it can't help the called consumer until the consumer finds out the name of the company CarGuard is working with:

> We do not engage in any marketing directly to consumers of any type. Unfortunately, without the identity of the seller there is no way for us to suspend calls. If the customer can let us know who the seller is, we can e-mail them and ask them to stop calling this customer. If the customer can provide us the name of seller, please e-mail it to *****************, and we will contact the seller and ask them to stop calling this customer.

*See* https://www.bbb.org/us/ks/leawood/profile/auto-service-contract-companies/carguard-administration-inc-0674-1000006173/customer-reviews (Last Visited May 14, 2022).

45.     CarGuard was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of vehicle service contracts.

46.     CarGuard derived a benefit from its interaction with the Plaintiff by the issuance of a policy.

47.     Moreover, CarGuard maintained interim control over A-List Marketing's actions.

48.     For example, CarGuard had absolute control over whether, and under what circumstances, it would accept a customer.

49.     Furthermore, CarGuard had day-to-day control over A-List Marketing's actions, including the ability to prohibit it from using pre-recorded methodology to contact potential customers of CarGuard.

50.     CarGuard failed to make such an instruction to A-List Marketing, and as a result, is liable for A-List Marketing's conduct.

51.     CarGuard also gave interim instructions to A-List Marketing by providing the volume of calling and leads it would purchase.

52.     CarGuard gave further interim instructions to A-List Marketing by providing the states that those companies were allowed to make calls into and restricting other states that they could not.

53.     CarGuard has previously received complaints regarding the telemarketing conduct of its third-party vendors.

54.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

55.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

56.     Plaintiff brings this action on behalf of themselves and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

57.     Plaintiff propose the following Class definitions, subject to amendment as appropriate:

**Pre-Record Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified  (2) received one or more calls on their cellular telephone (3) from or on behalf of the A-List Marketing promoting CarGuard goods or services, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

**National Do Not Call Registry:** All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation telemarketing call from or on behalf of the A-List Marketing (3) within a 12-month period, (4) that promoted CarGuard services (5) from four years prior the filing of the Complaint.

Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

58.     The Plaintiff is a member of and will fairly and adequately represent and protect the interests of these Classes as they have interests that conflict with any of the class members.

59.     Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

60.     This Class Action Complaint seeks injunctive relief and money damages.

61.     The Classes as defined above are identifiable through dialer records, other phone records, and phone number databases.

62.   Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

63.   The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

64.   Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

65.   There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

66.   There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

(a)  whether a pre-recorded message was used to send calls;

(b)  whether multiple telemarketing telephone calls were made promoting the goods or services to members of the National Do Not Call Registry Classes;

(c)  whether the telemarketing calls at issue were made to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(d)  whether Defendant's conduct constitutes a violation of the TCPA; and

(e)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

67.   Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has no interests which are antagonistic to any member of the Classes.

68.   Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and their counsel are

committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

69.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

70.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.) on behalf of the Robocall Classes**

71.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72.     CarGuard violated the TCPA by or causing to be sent via an agent pre-recorded calls to the cellular telephones of Plaintiff and members of the Robocall Class using a pre-recorded message without their prior express written consent.

73.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

74.     The Plaintiff and Robocall Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

75.     Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting the CarGuard's vendors using a pre-recorded voice in the future, except for emergency purposes.


**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))**
**on behalf of the National Do Not Call Registry Classes**

76.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

77.     CarGuard violated the TCPA and the Regulations by its agent make two or more telemarketing calls within a 12-month period on CarGuard's behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

78.     As a result of CarGuard's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

79.     Plaintiff and Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

80.     Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting CarGuard vendors from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

13

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      Injunctive relief prohibiting CarGuard's vendors from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using a prerecorded voice in the future;

B.      As a result of Defendant's violations of the TCPA, Plaintiff seeks for himself and each member of up to treble damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

C.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

PLAINTIFF,
By his attorneys

*/s/ Jeremy Jackson*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210

14

State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

Anthony I. Paronich (*subject to pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com