**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY BACCARI, on behalf of himself and others similarly situated, | : : : | C.A. NO. 2:22-cv-01952 |
| Plaintiff, | : : | |
| v. | : : | |
| CARGUARD ADMINISTRATION, INC., | : : | |
| Defendant. | : | |

**PLAINTIFF'S OPPOSITION TO CARGUARD ADMINISTRATION, INC.'S**
**<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

## I.      INTRODUCTION

Plaintiff Anthony Baccari sued automobile warranty provider CarGuard Administration, Inc. ("Defendant") for the actions of the telemarketing company it hired to promote its services for violations of Telephone Consumer Protection Act, 47 U.S.C. 227 ("TCPA") by transmitting pre-recorded message calls and calls to numbers on the National Do Not Call Registry.

Without the aide of any discovery, CarGuard submits a declaration of its owner and asks the Court to find that it is not vicariously liable and that no injury is traceable to CarGuard. However, that affidavit bolsters the potential liability of CarGuard, including conceding that: (a) A-List had an "exclusivity agreement" with CarGuard to market CarGuard products on its telemarketing calls (b) more than six months after the telemarketing engaged in by A-List continued, CarGuard became aware of it and terminated the agreement. However, *they re-signed A-List even after A-List conceded it had engaged in telemarketing*; and (c) CarGuard has not done any work to review A-List's calling records to see what customers were generated as a result of their telemarketing efforts. Indeed, CarGuard doesn't dispute the Plaintiff's allegations that it issued him a contract as a result of A-List's telemarketing.

Mr. Smith hasn't been deposed, but counsel for the Plaintiff has asked for his deposition date. A-List's counsel has recently accepted service of a subpoena that has a return date in August. The Plaintiff has provided CarGuard with an extension to their discovery responses, now due in August. As CarGuard's vicarious liability is a fact-intensive issue likely to be decided by a jury, Mr. Smith submitting this affidavit should not prevent the parties from engaging in discovery. As such, CarGuard's motion should be denied.

## PLAINTIFF'S ALLEGATIONS

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government

1

receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). However, the TCPA doesn't only restrict robocalls. Indeed, the Fourth Circuit has recognized that "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' id. § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' id. § 2(9).

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is

on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. Id…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace."  *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

Mr. Baccari's a local resident with the cellular telephone number of (856) 625-XXXX. *See* Complaint (ECF No. 1) at ¶ 23. That cellular telephone number is a residential telephone line used by Mr. Baccari for personal calls. *Id.* at ¶ 24. That telephone number had been on the National Do Not Call Registry for at least a year prior to September 2021. *Id.* at ¶ 25. Despite that, Mr. Baccari received pre-recorded telemarketing calls from A-List, or a call center retained on their behalf, on September 21, 22, 23, 24, 25, and 28, 2021. *Id.* at ¶ 26. The calls played a pre-recorded message about auto warranties. *Id.* at ¶ 27-29.

During the September 28, 2021 call, the Plaintiff responded to the pre-recorded message and engaged the telemarketer to learn their identity. *Id.* at ¶ 30. The call promoted CarGuard's services. *Id.* at ¶ 31. The caller attempted to sell the Plaintiff CarGuard vehicle warranty services. *Id.* at ¶ 32. The Plaintiff then received a proposed service contract from CarGuard as a result of the call. *Id.* at ¶ 33. The service contract provided the Plaintiff's address in Philadelphia. *Id.* at ¶ 34. The service contract also confirmed that the seller of the CarGuard policy was "Palisade Protection Group", which is a trade name used by A-List. *Id.* at ¶ 35.

**ARGUMENT**

**A.  The Smith Affidavit Doesn't Sufficiently Dispute CarGuard's Vicarious Liability for the Calls.**

Ever since the TCPA was enacted, the FCC has repeatedly warned that the TCPA's broad restrictions on various forms of "telephone solicitations" cannot be evaded simply by utilizing third parties to physically transmit illegal calls.  *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 10 FCC Rcd. 12391, ¶ 13 (1995).

In 2013, the FCC ruled that sellers could be vicariously liable for the unlawful calls of third-party telemarketers based on "federal common law principles of agency," including theories of formal agency, apparent authority, and ratification.  *See In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6582-84 (2013) ("2013 FCC Order").  "The FCC has interpretive authority over the [TCPA]."  *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 466-467 (6th Cir. 2010).  *See also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371-372 (6th Cir. 2015) (adopting 2013 FCC Order). In its 2013 Order, the FCC explained that vicarious liability was critical to realizing the TCPA's consumer protection goals:

> [A]s the telemarketing industry acknowledges – the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. … [C]onsistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules.

2013 FCC Order, 28 FCC Rcd. at 6588.  And, as described above, the FCC envisioned the scenario here where a defendant takes a strained reading of the plaintiff's complaint and asserts that the matter should be dismissed because the inner workings of the relationship between the defendant and the third party it used to physically place the calls has not been pled.

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles.  *Klein v. Just*

*Energy Grp., Inc.*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016)); *see also In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013).   The existence of an agency relationship is normally one for the trier of fact to decide.  *See Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276, 1283 (9th Cir. 1988), *rev'd in part on other grounds, UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999).

A plaintiff is required to allege a sufficient basis for any "one of the common law agency theories." *Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at *17-21 (D.N.J. Nov. 20, 2018).  "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (citing *Dish Network*). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016).

For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is *not* expected to allege "facts suggesting that" the defendant "instructed" the putative agent "to make the call to" the plaintiff, "had any authority over the time, means and manner of" the putative agent's solicitations, or "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship between Farmers and the Lombardi Agency are exclusively within the Defendants' custody and control."); *see Cunningham v. Rapid Response Monit. Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017)

5

("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery.").

Nevertheless, in this case, Plaintiff pleads robust facts giving rise to an inference that CarGuard is vicariously liable for A-List calls to Plaintiff, and the Affidavit of Trevor Smith doesn't meaningfully dispute several of the Plaintiff's dispositive allegations.

### 1.  Actual Authority

"Actual authority is the authority that a principal expressly or implicitly gives an agent." *United States v. Martinez*, 613 F.2d 473, 481 (3d Cir. 1980); *Lind v. Schenley Indus.*, Inc., 278 F.2d 79, 85 (3d Cir. 1960) ("'Actual authority' means, as the words connote, authority that the principal, expressly or implicitly, gave the agent."); *see Cunningham*, 251 F. Supp. 3d at 1199 ("The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business …."). An agent acts with actual authority if it "reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."  Restatement (Third) of Agency § 2.01; *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014) (citing Restatement (Third) of Agency § 2.01)).

Actual agency "does not require the principal to specify the singular acts for which his or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized."  *Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017 U.S. Dist. LEXIS 55023, at *21 (M.D. Fla. Apr. 10, 2017).  "The concept of scope of authority is broad.  An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives.  The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only."  *United States*

*v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing Restatement (Third) of Agency § 2.02(1)).

Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant directed an agent's calls by alleging facts giving rise to an inference that the defendant was "heavily involved" in the "sales practices and marketing procedures." *United States*, 256 F. Supp. at 922-923; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Here, Plaintiff alleges that CarGuard is liable for A-List Marketing's conduct because they control the manner and means of its telemarketing methods by:

- Contractually requiring A-List to promoted CarGuard products as they did with the Plaintiff;

- Accepting the business that originated through the illegal telemarketing calls through the issuance of vehicle service contracts[1];

- Failing to instruct A-List to not use pre-recorded messages;

- Instructing them on the volume of customers to contact

- Identifying the states they were permitted to contact.

Complaint at ¶¶ 43, 45, 49-52. Indeed, the Plaintiff has alleged (and public records demonstrate) that CarGuard has previously received complaints regarding the telemarketing conduct of its third-party vendors. *Id.* at ¶ 53. Furthermore, Plaintiff has alleged that CarGuard has informed the Better Business Bureau that it can control the actions of its sellers:

We do not engage in any marketing directly to consumers of any type. Unfortunately, without the identity of the seller there is no way for us to suspend

---

[1] Smith's affidavit states that while CarGuard doesn't want to keep the business derived from illegal telemarketing, it is noteworthy for its failure to state that CarGuard has engaged in a review of A-List's telemarketing conduct and identified customers that were generated on illegal calls.

calls. If the customer can let us know who the seller is, we can e-mail them and ask them to stop calling this customer. If the customer can provide us the name of seller, please e-mail it to *****************, and we will contact the seller and ask them to stop calling this customer.

*Id.* at ¶ 54. Mr. Smith's affidavit doesn't dispute this and such allegations are sufficient at this stage with discovery ongoing. *See Rogers v. Interstate Nat'l Dealer Servs.,* No. 1:20 CV 00554, 2020 U.S. Dist. LEXIS 142766, at *13 (N.D. Ohio Aug. 10, 2020) (Denying motion to dismiss in TCPA case, holding "plaintiff specifically alleges that Dealer Services hired John Doe to solicit customers on its behalf. Plaintiff further alleges that Dealer Services had some degree of control and oversight over the John Doe telemarketer that made the call. While plaintiff does not provide the exact details of the relationship between Dealer Services and John Doe in the Complaint, at this stage of the proceedings, he is not required to do so.") Indeed, with the circumstances alleged by the Plaintiff, it is more than plausible that the plaintiff may have a claim, and multiple courts have denied summary judgment for a defendant under such circumstances. *See Hossfeld v. Lifewatch, Inc.*, 2021 U.S. Dist. LEXIS 25650, *14-20 (N.D. Ill. Feb. 5, 2021); *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp. 3d 817, 829-33 (N.D. Ill. 2016); *Williams v. Pillpack LLC*, 2021 U.S. Dist. LEXIS 4052, *3 (W.D. Wash. Jan. 7, 2021).  Similar facts have also resulted in trial verdicts for the Plaintiff. *See Krakauer v. Dish Network L.L.C.*, 2017 U.S. Dist. LEXIS 86448, *5 (M.D. N.C. 2017) (upholding jury's verdict where defendant "periodically imposed requirements" on the telemarketing).

Ultimately, Plaintiff alleges way more than the mere existence of a contract between A-List and CarGuard, including specifically that CarGuard provided the geographic and other parameters to use to qualify leads during calls and authorized A-List to send those telemarketing calls. Therefore, at this stage of the proceedings, Plaintiff sufficiently alleges that CarGuard is

vicarious liability for A-Lists calls to Plaintiff based on an actual authority theory and should be able to proceed with discovery.

### 2. Ratification

"Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) (2006) cmt. d. ("Ratification does not require a pre-existing formal agency relationship."). "[R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act. It is necessary that the actor have acted or purported to act on behalf of the ratifier." Restatement (Third) of Agency § 4.01 cmt. b; *see Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'"). To demonstrate prospective ratification, a plaintiff must show that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, or that an agent acted for a principal's benefit and the principal "fail[ed] to object or repudiate an action." *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

The Ninth Circuit recently explained the circumstances that support a ratification theory in a TCPA case in reversing a district court's grant of summary judgment for the defendant:

> Royal Seas had knowledge of facts that would have led it to investigate Prospects's lead-generation activities to determine if it was calling only consenting individuals, but instead accepted leads generated by Prospects's calls with scant investigation. Royal Seas knew that Prospects placed calls using prerecorded voices, a prima facie violation of the TCPA. Royal Seas also knew that it received 2.1 million warm-transferred calls from Prospects between January 2017 and June 2018. Royal Seas knew that TCPA compliance required each call to be to an individual who had previously "agreed" to be called by Royal Seas ….

Royal Seas also knew that of the 560 customers whom Prospects warm-transferred and who made purchases from Royal Seas, 13 percent had phone numbers that did not match the customer consent data that Prospects had provided to Royal Seas, and 31 percent did not have a matching phone number and last name. …

These facts, in combination with the evidence of widespread TCPA violations in the cruise industry, would support a finding that Royal Seas knew facts that should have led it to investigate Prospects's work for TCPA violations. See Henderson, 918 F.3d at 1076. We reverse the district court's summary judgment in favor of Royal Seas as to ratification.

*McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 U.S. App. LEXIS 9079, at *6-8 (9th Cir. Apr. 5, 2022).

Here, Plaintiff sufficiently pleads CarGuard's vicarious liability based up on a ratification theory using many of the same allegations that support actual authority. Specifically, Plaintiff alleges that CarGuard knowingly benefitted from A-List's telemarketing. Mr. Smith concedes that CarGuard was made aware of the telemarketing and then decided to continue the relationship. It says that it hasn't received a specific complaint about their unlawful telemarketing, but doesn't explain *any* due diligence it has done to see if A-List continues to engage in telemarketing. Discovery, including the Plaintiff's outstanding subpoena to A-List, will reveal this. The Plaintiff further alleges that CarGuard has received repeated complaints about the telemarketing of its third-party companies like A-List, including responding to a Better Business Bureau complaint saying as much, which Mr. Smith's affidavit doesn't deny.

Multiple courts have held that after receiving allegations of violations of TCPA, a reasonable inference can be raised that a defendant such as CarGuard ratified the conduct. *See Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp. 3d 817, 829-33 (N.D. Ill. 2016) (sellers ratified telemarketers conduct by accepting the benefits of the unlawful calls even after being put on notice that the calling campaign may violate the TCPA); *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078, *13-14 (N.D. Cal. 2018) (a reasonable jury

could find defendant liable on ratification theory where "Alarm.com knew of Alliance's allegedly illegal telemarketing conduct and accepted the benefits therefrom"); *Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593, at 8 (S.D. Fl. 2015), (allegations sufficient to state a claim where seller accepted the benefits of the conduct by having text messages sent on its behalf to phone numbers obtained on its behalf); *Klein v. Commerce Energy, Inc.,* 2017 WL 2672290, at *14 (W. D. Pa., 2017) (creditor ratified its debt collectors calls because it is presumed it would receive the benefit of any money collected and it knew that its collector was calling the wrong party). Indeed, as another court held while denying a similar motion to dismiss regarding the calling of a John Doe for a defendant in a TCPA case:

> Plaintiff further alleges that despite receiving widespread complaints about these TCPA violations, Dealer Services "continued to fail to monitor the third parties operating on its behalf" and "knowingly and actively accepted business that originated through the illegal telemarketing calls." Accepting these factual allegations as true, plaintiff has plead sufficient facts to raise a reasonable inference that Dealer Services ratified the conduct of the John Doe.

*Rogers v. Interstate Nat'l Dealer Servs.,* No. 1:20 CV 00554, 2020 U.S. Dist. LEXIS 142766, at *12 (N.D. Ohio Aug. 10, 2020).

Finally, this "reasonable person" standard is not something that is appropriately suitable to be resolved at the motion to dismiss stage in the defendant's favor without discovery into the reaction of CarGuard with respect to the prior complaints received. Did CarGuard ask A-List for sufficient information that the calls were made legally? Did it ask for any information? It's unknown at this point, and the affidavit only says that Mr. Smith took A-Lists word for it that they wouldn't do it again, but discovery will reveal the answers to those questions.

These facts are sufficient to allege CarGuard's vicarious liability and permit the case to proceed to discovery.

**B. A-List's Illegal Telemarketing is "Traceable" to CarGuard and CarGuard's Vicarious Liability can Provide Redress to Consumers for their Violation of the TCPA.**

The Plaintiff has pled that CarGuard is vicariously liable for A-List's conduct, and Mr. Smith's untested affidavit doesn't change that, as discussed above. As such, the Plaintiff has demonstrated that his injury is traceable to CarGuard, who hired A-List and continues to work with them despite having knowledge that they have engaged in telemarketing. *See Bank v. Gohealth*, No. 19 CV 5459 (MKB) (CLP), 2021 U.S. Dist. LEXIS 44110, at *15 (E.D.N.Y. Mar. 8, 2021) (holding in a TCPA case, "Here, while the allegations against GoHealth may not be enough to eventually establish liability on the part of GoHealth (see discussion infra), they suffice to allege that plaintiff's injury is traceable to the defendant and, if proven, make it likely that the injury would be redressable if there were a favorable outcome in the case. Having considered the allegations in the Complaint, the Court concludes that plaintiff has adequately alleged facts that qualify as an "injury-in-fact" sufficient to confer constitutional standing."). Indeed, the Plaintiff's allegations uncontroverted by Mr. Smith's affidavit (and often bolstered by Mr. Smith), establish: (a) CarGuard hired A-List to market its services (b) CarGuard accepted customer contracts, including the Plaintiff's, from those telemarketing efforts (c) CarGuard learned of the telemarketing conduct and decided to continue its relationship with A-List; and (d) CarGuard is unaware if A-List has continued telemarketing to date, but it doesn't believe anyone has complained to them about it. Discovery will reveal the complete story, but the current version is more than sufficient for the case to continue.

**CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendant's motion.


Respectfully Submitted,
**For the Plaintiff,**


Dated: June 21, 2022                     */s/ Anthony I. Paronich*
                                         Anthony I. Paronich
                                         Paronich Law, P.C.
                                         350 Lincoln Street, Suite 2400
                                         Hingham, MA 02043
                                         (508) 221-1510
                                         anthony@paronichlaw.com
                                         *Pro Hac Vice*


                                         *Attorneys for Plaintiff and the putative Class*


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 21, 2022, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification to all counsel of record.


                                         */s/ Anthony I. Paronich*
                                         Anthony I. Paronich

13